UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.08-80779-Civ-Hurley/Hopkins

VINCENT NAPOLES-ARCILA,
et al.,

        Plaintiffs,

vs.

PERO FAMILY FARMS, LLC,

        Defendant.

_____/

## REPORT AND RECOMMENDATION AS TO MOTION FOR DECLARATION OF CLASS ACTION (DE 6)

**THIS CAUSE** has come before this Court upon an Order referring Plaintiff's Motion for

Declaration of Class Action to the Undersigned United States Magistrate Judge for a Report and

Recommendation.  (DEs 6, 8).  For the reasons that follow, this Court **RECOMMENDS** that the

District Court **GRANT** the Motion.  (DE 6).

## BACKGROUND

In July of 2008, the thirty (30) named Plaintiffs commenced the instant action for breach

of contract and violations of the Florida Minimum Wage Act and the Fair Labor Standards Act

("FLSA").  (DE 1).  Defendant Pero Family Farms, LLC ("Pero"), based in Delray Beach,

Florida, harvests and packs vegetables for sale in interstate commerce.  (DE 1, pg. 3).  Plaintiffs

are agricultural workers who were recruited by Pero from their residences in the Mexican state of

Michoacan and brought to work in South Florida during the 2007-2008 vegetable season as part

of the federal "H-2A worker" program.[1]  (DE 1, pgs. 4-6; DE 18, pg. 2).  Pursuant to the "H-2A

worker" program, agricultural employers must file a temporary labor certification application

with the United States Department of Labor, including a job offer, which is commonly referred to

as a "clearance order" or "job order."  (DE 1, pg. 6).  The "clearance order" or "job order"

establishes the minimum benefits, wages, and working conditions.  (DE 1, pg. 6).[2]

After the Department of Labor approved Pero's clearance order for an anticipated 42

hours of work per week from October 28, 2007, through May 31, 2008, the federal government

issued three hundred (300) visas for the H-2A workers.  (DE 1, pgs. 7, 8).  Pero sent an agent,

Pedro Serrano, to Chilchota, Michoacan, Mexico, and recruited Plaintiffs and others to fill the

three hundred (300) approved positions.  (DE 1, pg. 8).  Each of the workers was hired pursuant

to the same clearance order.  (DE 1, pg. 8).  As a condition of their employment, each worker had

to (1) pay a one hundred twenty dollar ($120.00) recruitment fee; (2) purchase Mexican

passports; (3) pay a visa reciprocity fee of one hundred fifty dollars ($150.00); (4) travel, at their

own expense, from their homes in Chilchota, Mexico, to Matamoros, Mexico to apply for their

visas; (5) pay one hundred fifteen dollars ($115.00) for the H-2A visas; (6) pay an unspecified

fee to Pero's agent for assistance with the H-2A visa application; and, (7) pay for several days'

lodging in Matamoros while they waited for the visa applications to be reviewed by the United

States consulate.  (DE 1, pgs. 8-9).  After the H-2A visas were issued, Plaintiffs crossed the

United States-Mexican border, and had to pay a fee of six dollars ($6.00) to the United States

---

[1]   Foreign workers permitted entry pursuant to 8 U.S.C.§ 1101(a)(15)(H)(ii) are commonly referred to as
"H-2A" workers.  *See Moreno-Espinoa v. J&J Ag Prods., Inc.*, 247 F.R.D. 686, 687 (S.D. Fla. 2007).

[2]   The clearance order serves as the contract between the employer and worker.  *See Arriaga v. Florida
Pacific Farms*, 305 F.3d 1228, 1233 n.5 (11th Cir. 2002).

2

Citizenship and Immigration Services for the issuance of an I-94 form prior to being allowed entry. (DE 1, pg. 9). The workers traveled from the border by bus to Pahokee, where they commenced work for Pero. (DE 1, pg. 9).

Although the clearance orders guaranteed work until May 31, 2008, Pero purportedly terminated the workers' employment early, on or about April 8, 2008. (DE 1, pg. 10).[3] As a result, Plaintiffs allege that Pero failed to provide Plaintiffs with at least three-quarters (3/4) of the work days as guaranteed by the contract, and did not pay Plaintiffs any compensation in connection with their early termination. (DE 1, pg. 10). Plaintiffs also claim that Pero failed to reimburse them for the fees paid in connection with obtaining their employment with Pero. (DE 1, pg. 9, ¶ 27). After their employment was terminated, Plaintiffs were forced to find and pay for their own transportation back to their residences in Mexico. (DE 1, pg. 10).

Subsequent to filing the complaint, Plaintiffs filed the instant Motion for Declaration of a Class Action, as well as a Supplemental Memorandum seeking certification of a subclass with respect to Count II of the Complaint. (DEs 6, 7, 18). With Pero's responses having been filed, the matter is now ripe for review. (DE 14, 26). For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion, and Certify both the putative general class and the putative subclass. (DE 6).

## DISCUSSION

In the Motion, Plaintiffs seek class certification only as to Counts II and III, which allege Breach of Contract and a violation of Florida's Minimum Wage Act, respectively. (DE 1, pgs.

---

[3] A Supplemental Memorandum filed by Plaintiffs indicates that approximately 100 workers voluntarily left Pero's employ in the spring, prior to April 8, for various reasons, including dissatisfaction with the food served at Pero's labor camp, and the declining amount of work available. (DE 18, pg. 9).

12-14; DE 6, pgs. 1-4).[4]  In short, Plaintiffs contends that a class should be certified as to Counts

II and III because the requirements of Rule 23(a) and 23(b)(3) have been met.  Plaintiffs argue

that (1) because the class could total 150 members or more, the members of the class are so

numerous as to make joinder impractical; (2) joinder is not feasible in light of the limited size of

the class members' claims, their geographic dispersion, as well as their relative indigency, lack of

proficiency in the English language, and unfamiliarity with the American legal system; (3)

common questions of law or fact exist with regard to the members of the class, including whether

Pero failed to pay Plaintiffs proper wages for their first week of employment, and whether Pero

failed to provide Plaintiffs with employment opportunities as promised in their employment

contracts and as required by federal law; (4) the claims of the named Plaintiffs are typical of

those of the alleged class; (5) the named Plaintiffs will fairly and adequately represent the

interests of the class, and Plaintiffs' counsel is experienced in federal class action litigation and

claims involving H-2A workers; (6) the common questions of law and fact predominate over any

individual questions; and, (7) a class action is superior to other methods of adjudicating the

controversy.  (DE 6, pgs. 1-3; DE 7, pgs. 1-19).

Plaintiffs seek to represent a general class consisting of

All individuals admitted to the United States pursuant to Section
101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C.§
1101(a)(15)(H)(ii)(a) ("H2A workers") who were employed by Pero Family
Farms, L.L.C. to harvest vegetables during the 2007-08 Florida vegetable harvest.

(DE 6, pg. 2).

In a supplemental memorandum, Plaintiffs contend the evidentiary record supports the

---

[4]  Plaintiffs do not seek to certify a class as to Count I, an FLSA claim.  (DEs 1, 6).

creation of a subclass as to a portion of the Breach of Contract claims raised in Count II. (DE 18, pgs. 8-13). According to Plaintiffs, the contract claims which are based on Pero's failure to reimburse the workers' pre-employment expenses apply to all members of the general class, including those who did not complete the job because entitlement to such expenses arises when the worker begins the job. (DE 18, pgs. 8-9) (*citing Moreno-Espinosa v. J&J Ag Prods., Inc.*, 247 F.R.D. 686, 689 (S.D. Fla. 2007)). However, Plaintiffs note that the workers who voluntarily abandoned their employment,[5] or who were terminated for cause prior to the end of the harvest, have no claim for either three-quarters (3/4) of the hours guaranteed by the contract, or outbound transportation expenses and subsistence. (DE 18, pgs. 9-10) (*citing* 20 C.F.R.§ 655.211).

As such, Plaintiffs contend that a subclass should be created as to Count II, which Plaintiff defines as

> All individuals admitted to the United States pursuant to Section 101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("H-2A workers") who were employed by Pero Family Farms, L.L.C. to harvest vegetables during the 2007-08 Florida vegetable harvest who were employed by Pero as of April 8, 2008.

(DE 18, pg. 12). According to Plaintiffs, although Pero originally employed approximately one hundred fifty (150) H-2A workers, the parties agree that the putative subclass would consist of the approximately fifty (50) workers who remained in Pero's employ as of April 8, 2008. (DE 18, pgs. 9-10).

In response, Pero agrees that a class should be certified because (1) the class members are

---

[5] Plaintiff's Supplemental Memorandum and the depositions show that many workers voluntarily abandoned their employment because of dissatisfaction with the food being served at Pero's camp, and because of declining work hours. (DE 18, pg. 9; exhs. 2-7).

readily ascertainable; (2) it would be more inefficient and time consuming to litigate individual actions; (3) Pero has kept good records as to the amounts paid to each worker, and to the departure dates of each worker; (4) there are common issues of law and fact in each case; (5) the named Plaintiffs will likely represent the spectrum of factual issues that have arisen herein; and, (6) Plaintiffs' counsel and the Migrant Farmer Justice Project are well respected attorneys who will adequately represent the interests of the class. (DE 14, pg. 1; DE 26, pgs. 1-2). In response to Plaintiffs' supplemental memorandum, Pero likewise agrees to certification of a subclass of the fifty (50) workers who remained in Pero's employ as of April 8, 2008. (DE 26, pgs. 1, 3).[6]

Class certification is governed by Rule 23. *See Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996). For a court to certify a class, the named plaintiffs must have standing, and the putative class must meet each of the requirements of Rule 23(a), as well as at least one of the requirements of Rule 23(b). *See Vega v. T-Mobile USA, Inc.*, No. 07-13864, 2009 WL 910411, *4 (11th Cir. April 7, 2009) (*quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)). Rule 23(a) requires the putative class to meet the prerequisites of "numerosity, commonality, typicality, and adequacy of representation." *Vega*, 2009 WL 910411 at *4 (*citing* Fed. R. Civ. P. 23(a); *quoting Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-1188 (11th Cir. 2003)).

Rule 23(b) additionally requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

---

[6] Pero states that although he agrees to class certification as to Counts II and III of Plaintiff's complaint, it reserves the right to challenge damages claimed by each worker. (DE 26, pg. 1). Pero contends that such workers should not be permitted to assert claims beyond those of other workers, and that such were not forced to leave due to lack of work, and that Pero was forced to hire additional workers to replace them. (DE 26, pg. 3).

class action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b) (2009); *Vega*, 2009 WL 910411 at *4 (*citing Klay*, 382 F.3d

1251).  The factors which must be considered under Rule 23(b)(3) include:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D) (2009).  *See also Vega*, 2009 WL 910411 at *16 (noting that the

elements of Rule 23(a) and 23(b)(3) must both be met; further noting that the 23(b)(3) factors are

"non-exclusive").

On a motion to certify class, the court must accept as true the allegations contained in

Rule 23 requires the court to conduct a "rigorous analysis" of the elements before

certifying a class.  *Vega*, 2009 WL 910411 at *4.  Although a determination of the merits of the

plaintiff's claim is not required at the class certification stage, the court "can and should consider

the merits of the case to the degree necessary to determine whether the requirements of Rule 23

will be satisfied." *Id*. at *4 (*quoting Valley Drug*, 350 F.3d at 1188 n. 15 (*citing Gen. Tel. Co. of

the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (*other citations omitted*).

On a motion to certify class, the court must accept as true the allegations contained in

Plaintiff's complaint.  *See Moreno-Espinosa v. J&J Ag Prods., Inc.*, 247 F.R.D. 686, 691 (S.D.

Fla. 2007) (*citing Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1337

(11th Cir. 2006)).  Plaintiff bears the burden of showing that the elements of Rule 23 have been

met.  *See Moreno-Espinosa*, 247 F.R.D. at 687 (*citing Valley Drug*, 350 F.3d at 1187)).  The

court has "broad discretion" in determining whether to certify a class.  *See Moreno-Espinosa*,

247 F.R.D. at 687-688 (*citing Ross v. Bank South, N.A.*, 837 F.2d 980 (11th Cir. 1988)).

Initially, this Court concludes that the named Plaintiffs have standing.  In a motion for

class certification, it must be shown that " . . . the proposed class representatives have standing to

pursue the claims as to which classwide relief is sought."  *Silva-Arriaga v. Texas Express, Inc.*,

222 F.R.D. 684, 687 (M.D. Fla. 2004) (*citing Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247

F.3d 1262, 1287 (11th Cir. 2001)).  As noted by Plaintiff, and as alleged in the Complaint, each of

the named Plaintiffs was employed by Pero as an H-2A worker during the 2007-2008 South

Florida vegetable harvest, each was hired pursuant to the same clearance order, and each

allegedly suffered the same breaches of contract and violations of the Florida Minimum Wage

Law which underlie the motion for class certification.  (DE 1, pgs. 3, 8, 9-10, 12, 14 at ¶¶ 6, 22,

23, 27, 28, 29, 30; DE 7, pg. 4).

### Rule 23(a) Factors

Turning now to Rule 23, this Court concludes that Plaintiff has shown that each of the

Rule 23(a) factors has been satisfied with respect to both the putative general class and the

putative subclass.

### Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  *See Vega*, 2009 WL 910411 at *5.  Although mere allegations of numerosity are

insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in

the class."  *Id*. at *5 (*quoting Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.

1983)).  Nevertheless, a plaintiff must still provide some showing so that the district court may

make a "supported factual finding that the class actually certified meets the numerosity

requirement."  *Vega*, 2009 WL 910411 at \*5.  There is no hard and fast rule which specifies that

a certain number of plaintiffs renders joinder impracticable.  *See Moreno-Espinosa,* 247 F.R.D.

at 688 (*citation omitted*).

    In support of their claim that the putative general class could include over one hundred

fifty (150) individuals, and that the putative subclass would include approximately fifty (50)

individuals, Plaintiffs cite to depositions taken thus far.  (DE 6, pg. 2; DE 18, pg. 3).  Pero does

not dispute such contention.  (DEs 14, 18).  A review of several depositions included in the

record herein support Plaintiffs' contentions.  (DE 18, exh. 2, deposition of Amador Bartolo

Elias, pg. 54; exh. 4, deposition of Bruno Hernandez Valenzuela, pg. 26; exh. 7, deposition of

Saul Yepes Rodriguez, pgs. 19, 42).

    Courts have held that classes including 38 and 40 members were "sufficiently large to

render joinder impracticable."  *Moreno-Espinosa,* 247 F.R.D. at 688 (38 H-2A workers) (*quoting*

*Salas-Mateo v. Ochoa*, No. 03-14357-CIV, 2004 WL 1824124, \* 2 (S.D. Fla. Mar. 26, 2004) (40

H-2A workers)).  Moreover, in light of the geographic dispersion of the workers, their relatively

small damage claims, and their probable lack of familiarity with the American legal system or the

English language, joinder appears impracticable.[7]  *See Moreno-Espinosa,* 247 F.R.D. at 688

(finding joinder of 38 Mexican H-2A workers to be impracticable in light of their geographic

dispersion, small individual damage claims, potential unfamiliarity with the U.S. legal system or

---

[7] The depositions included in the record show that the workers all reside in Mexico, and all spoke through an interpreter.  (DE 18, exhs. 2-7).

the English language) (*citing Salas-Mateo*, 2004 WL 1824124 at \*2). *See also Silva-Arriaga v.
Texas Express, Inc.*, 222 F.R.D. 684 (M.D. Fla. 2004) (finding that putative class of over 200
migrant workers whose homes were in the United States, Mexico, and Central America met
numerosity element because the class was geographically dispersed, most of the class members
spoke only Spanish and had little familiarity with the American legal system, and joinder would
be impracticable) (*citing Rodriguez v. Carlson* 166 F.R.D. 465, 472 (E.D. Wash. 1996)
(concluding same with respect to class of 100 migrant workers)).

In light of the foregoing, this Court concludes that Plaintiffs' putative general class of one
hundred fifty (150) or more, and Plaintiffs' putative subclass of fifty (50) meets the numerosity
requirement of Rule 23(a).

**Commonality**

The commonality requirement demands that there be "questions of law or fact common to
the class." *See Vega*, 2009 WL 910411 at \*6. Put another way, a class action must involve
issues that are susceptible to class-wide proof. *See Moreno-Espinosa v*, 247 F.R.D. at 688 (*citing
Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Commonality does not require that all
questions of law and fact be common, or that the common questions of law and fact
"predominate" over individual issues. *See Vega*, 2009 WL 910411 at \*6 (*citations omitted*). The
burden to meet the commonality requirement of Rule 23(a) is "relatively light." *Vega*, 2009 WL
910411 at \*6.

This Court concludes that the commonality element has been met for both the putative
general class and putative subclass with regard to Plaintiffs' Florida Minimum Wage claims in
Count III of the Complaint. In Count III, Plaintiffs contend that Pero is obligated to reimburse all

workers in both the class and subclass for various pre-employment expenses, such as recruitment fees, visa fees, passport expenses, and travel and lodging expenses, pursuant to *Arriaga*, 305 F.3d 1228.  (DE 1, pgs. 8-15; DE 18, pgs. 2-13).  In light of fact that the deposition testimony contained in the record shows that the workers incurred the same pre-employment expenses, (DE 18, exhs. 2-7), this Court concludes that there are questions of law and fact that are common to both the putative general class and subclass.

This Court also concludes that the commonality element has been met for the putative subclass with regard to Plaintiffs' claims for Breach of Contract in Count II of the Complaint. With respect to each of the approximately fifty (50) workers who remained in Pero's employ as of April 8, 2008, Plaintiffs argue that Pero breached the same clearance order with respect to each of the workers in the subclass in the same manner; that is, by failing to fulfill its guarantee of work for at least three-quarters (3/4) of the hours set out in the contract, and by failing to pay for the costs of outbound travel and subsistence for each of the workers.  (DE 1, pgs. 7-8, ¶¶ 19-23; DE 18, pgs. 9-10).  The depositions show that as of April 8, 2008, (1) Pero refused to let the workers who remained to continue working; (2) Pero refused to provide housing and daily transportation to the worksite for the remaining workers; and, (3) each of the remaining workers paid their own costs for their return trips to Mexico.  (DE 18, exhs. 2-7).  In light of such testimony, this Court concludes that there are questions of law and fact that are common to the putative subclass.

*See Moreno-Espinosa*, 247 F.R.D. at 689 (finding commonality requirement met where there were mixed questions of law and fact common to the entire class and central to the litigation).

11

**Typicality**

Rule 23 requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3) (2009).  "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 2009 WL 910411 at *14 (*quoting Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (*quotations and internal citations omitted; alteration in original*)).  Although commonality and typicality may overlap, commonality "[t]raditionally . . .  refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega*, 2009 WL 910411 at *14 (*quoting Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir.2001) (*citing Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Here, the named Plaintiffs' claims are virtually identical to those to those of the other prospective members of both the putative general class and putative subclass.  Although the claims of the general class and the subclass differ in that a portion of the general class will be precluded from raising certain breach of contract claims as a result of their early departure from Pero's employ, there appears to be no other distinction between the claims of the named Plaintiffs and the other class members.  Unlike *Vega*, 2009 WL 910411 at *14, where the Eleventh Circuit concluded that typicality was lacking where the complaint contained no allegation of a common contract among all the class members, here, each of the named Plaintiffs and other putative class members were employed pursuant to the same clearance order.  (DE 1,

pgs. 7-8).  For both Counts II and III, Plaintiffs will be required to establish the same facts, and

meet the same legal principles, as each of the other general class and subclass members.  Because

there appears to be "a sufficient nexus exists between the claims of the named representatives

and those of the class at large," *Vega*, *supra*, this Court concludes that the typicality requirement

has been met for both the putative general class and putative subclass.

See *Moreno-Espinosa*, 247 F.R.D. at 689 (finding the typicality element to be satisfied

where there was no distinction between the claims of the plaintiff and the class members).

**Adequacy of Representation**

Under Rule 23(a)(4), the court must find that "the representative parties will fairly and

adequately protect the interests of the class."  Under this section, a class should not be certified if

the interests of the named plaintiff are antagonistic to those of the other members of the class,

and if any such conflict of interest is fundamental, meaning that it relates to the specific issues in

controversy.  *See Moreno-Espinosa*,  247 F.R.D. at 690 (*citing Pickett v. Iowa Beef Processors*,

209 F.3d 1276, 1280 (11ᵗʰ Cir. 2000)).  In addition, a class cannot be certified if its members

have opposing interests, or when the class is comprised of members who benefit from acts which

are alleged to be harmful to other members of the class.  *See Id*. (*citing Pickett*, 209 F.3d at

1280).  Rule 23(a)(4) also requires the representative plaintiff to provide competent counsel and

to vigorously prosecute the action on behalf of the class.  *See Id*. (*citing Fuller v. Becker &*

*Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000)).

Here, there appears to be no conflict between the interests of the named Plaintiffs and the

other members of the putative general class or putative subclass.  None of the members of the

putative general and putative subclass have opposing interests, and none of the members of either

class would benefit from acts which would harm others.  Finally, Plaintiffs' counsel appears to be competent.  He is alleged to have previously handled actions on behalf of H-2A workers to enforce their rights under employment contracts, and has handled numerous class actions in federal court.  (DE 1, pg. 5, ¶ 14).[8]  Pero agrees that counsel for Plaintiffs and the Migrant Farmer Justice Project are well respected attorneys who will adequately represent the interests of the class.  (DE 14, pg. 1).  In light of the foregoing, this Court concludes that Rule 23(a)(4) has been met.

### Rule 23(b)(3) Factors

Plaintiff contends that Rule 23(b)(3) has also been met with regard to both the putative general class and putative subclass.  (DE 7, pg. 15; DE 18, pg. 11).  Pero does not dispute such assertion.  (DEs 14, 26).

Rule 23(b)(3) requires two findings: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Vega*, 2009 WL 910411 at *16.  The four suggested considerations under Rule 23(b)(3) include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

[8]  Counsel for Plaintiff, Gregory Schell, Esq., is reported as counsel for migrant worker plaintiffs in several reported decisions cited in the instant Report and Recommendation.  *See Arriaga*, 305 F.3d at 1231; *Moreno-Espinosa*, 247 F.R.D. at 687; *Figueroa-Cardona*, *infra*, 2007 WL 672303 at *1; *Salas-Mateo*, 2004 WL 1824124 at *1; *Silva-Arriaga*, 222 F.R.D. at 687.

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and,

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D) (2009).  *See also Vega*, 2009 WL 910411 at * 16.

## **Predominance**

In evaluating predominance, the court must focus on the legal or factual questions that qualify each class member's case as a genuine controversy.  *See Moreno-Espinosa*, 247 F.R.D. at 690.  The predominance analysis "is far more demanding than 23(a)'s commonality requirement."  *See Id*. (*citing Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)).  Predominance has been described as the "central and overriding prerequisite for the Rule 23(b)(3) class."  *Vega*, 2009 WL 910411 at *16 (*citing Jackson*, 130 F.3d at 1006).

Here, although there will be questions which affect only individual members as a result of minor factual variations in the claims, the underlying claims of the putative general and putative subclass members are virtually identical.  As noted by Plaintiffs, any individual claims are subsumed within the class claims.  (DE 7, pg. 16).  Moreover, the fact that minor factual variations exist does not "cause the overarching common issues to 'break[] down into an unmanageable variety of legal issues and factual issues."  *Moreno-Espinosa*, 247 F.R.D. at 690 (*quoting Andrews v. American Telephone & Telegraph Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)).  All members of the putative general class claim they were hired pursuant to the same clearance order, and that Pero failed to reimburse them for the same types of expenses.  All members of the putative subclass additionally claim that Pero breached their contracts in the same manner.  All members of both the putative general class and putative subclass will present the same proof in

support of their claims.  And, in light of the fact that the deposed workers testified that they were
all required by Pero to sign forms indicating that they voluntarily terminated their employment as
of April 8, (DE 18, exhs. 2-7), it appears that Pero is likely to raise a common defense as to all
claims.  Under such circumstances, this Court concludes that "questions of law or fact common
to class members predominate over any questions affecting only individual members." *Vega*,
2009 WL 910411 at *16.  *See Moreno-Espinosa*, 247 F.R.D. at 690 (finding predominance
despite some factual variations in the specific claims of the individual class members).

**Superiority**

Finally, in light of the factors listed in Rule 23(b)(3)(A)-(D), this Court concludes that a
class action is superior to other available methods for fairly and efficiently adjudicating the
controversy." *Vega*, 2009 WL 910411 at *16.

As to Rule 23(b)(3)(A), it appears that the putative class members of both the general
class and the subclass have little interest in individually controlling the prosecution or defense of
separate actions.  (DE 7, pgs. 16- 17).  Such conclusion is reinforced after considering the fact
that all of the members of the putative general and putative subclass reside in Mexico, seek small
individual amounts of recovery, are relatively unfamiliar or completely unfamiliar with the
English language and American judicial system, and are likely indigent.  (DE 7, pg. 17).

As to Rule 23(b)(3)(B), Plaintiff's counsel states that no other litigation has already been
instituted by or against the putative members of the class or subclass.  (DE 1, pg. 5, ¶ 15c; DE 7,
pg. 17).

With regard to Rule 23(b)(3)(C), it appears desirable to concentrate the litigation of the
claims of both the class and subclass in this forum.  Pero's headquarters are purportedly located

within the Southern District of Florida, and the cause of action arose within the Southern District.

*See Figueroa-Cardona v. Sorrells Bros. Packing Co.*, No. 2:05-CV-601FTM99SPC, 2007 WL

672303, *5 (M.D. Fla. Feb. 14, 2007) (finding that Rule23(b)(3)(C) was met where the employer

was based in the Middle District, the principals resided there, and the employment records and

other evidence were located there).

Finally, with regard to Rule 23(b)(3)(D), it does not appear that the instant case presents

any difficulties in managing a class action that are distinct from other class actions.  Although

every class action presents administrative difficulties, requiring each Plaintiff to bring individual

actions would likely impose a far greater burden on the Court as a result of having to readdress

the same claims repeatedly, whether in the context of discovery disputes or other motion practice.

In light of the four (4) factors enumerated in Rule 23(b)(3)(A)-(D), this Court concludes

that "the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (2009).

*See Moreno-Espinosa*, 247 F.R.D. at 690 (finding class action to be superior to other

methods in light of the following: (1) most of the prospective class members reside in Mexico,

did not speak English, and had no interest in maintaining separate actions; (2) no other litigation

had been commenced on behalf of the prospective class members; (3) the Southern District of

Florida was the most desirable forum for the litigation because many of the relevant employment

records were located within the District, the prospective class members resided in the District

during their employ, and the employer regularly conducted business in the District; (4) there was

no evidence that class treatment would result in administrative difficulties beyond those normally

associated with class actions).

**Pero's contentions**

On a final note, although Pero purports to agree to class certification, Pero reserves its

right to challenge the damages which may ultimately be claimed by the workers, and points out

that factual discrepancies exist as to the expenses that Plaintiffs contend Pero is obligated to

reimburse Plaintiffs.  (DE 26, pg.1).[9]  However, as noted in *Moreno-Espinosa*, 247 F.R.D. at 690,

the mere existence of such factual variations does not lead to a conclusion that class certification

should be denied.  *See Id*. (noting that the presence of individual issues does not necessarily

result in a break down of the "overarching common issues" into "an unmanageable variety of

individual legal and factual issues." (*quotation omitted*).

**CONCLUSION**

In conclusion, this Court **RECOMMENDS THAT** the District Court **GRANT** Plaintiff's

Motion to Certify Class, (DE 6), and certify the following general class and subclass,

respectively:

> All individuals admitted to the United States pursuant to Section
> 101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C.§
> 1101(a)(15)(H)(ii)(a) ("H2A workers") who were employed by Pero Family
> Farms, L.L.C. to harvest vegetables during the 2007-08 Florida vegetable harvest.

> All individuals admitted to the United States pursuant to Section
> 101(a)(15)(H)(ii)(a) of the Immigration and Nationality Act, 8 U.S.C. §

---

[9]   Pero takes issue with its alleged obligation to reimburse Plaintiffs for the recruitment fees, passport expenses, visa application fees, travel expenses to Matamoros, lodging and meal expenses in Matamoros, visa issuance fees, I-94 fees, and travel expenses to Florida. (DE 26, pgs. 2-3).  Pero also states that because Plaintiffs' motion for class certification does not address Plaintiffs' FLSA claim contained in Count I of the Complaint, the Court needs to determine how such claims should be treated.  (DE 18, pg. 1).  However, because the FLSA provides its own framework for collective actions, and because Plaintiffs do not move for class certification as to Count I, *see note 4, supra*, Plaintiffs' FLSA claim need not be addressed here.  *See, Moreno-Espinosa*, 247 F.R.D. at 687 n.1 (noting that the FLSA provides its own statutory framework apart from Rule 23).

18

1101(a)(15)(H)(ii)(a) ("H-2A workers") who were employed by Pero Family Farms, L.L.C. to harvest vegetables during the 2007-08 Florida vegetable harvest who were employed by Pero as of April 8, 2008.

<u>**NOTICE OF RIGHT TO OBJECT**</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983).  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE and SUBMITTED** in Chambers this 19 day of May, 2009, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Hon. Daniel T.K. Hurley, Senior United States District Court Judge for the Southern District of Florida
Counsel of record